FILED
JAMES BONINI
CLERK

07 MAR 26 AM 8: 44

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Anthony Wallace,                  )
                     Plaintiff,   )        Case No. 1:06-cv-875
                                  )
vs.                               )        Chief Judge Beckwith
                                  )
Johnston Coca-Cola Bottling       )        Magistrate Judge Black
Group, Inc., *et al.*,            )
                     Defendants.  )

## O R D E R

This matter is before the Court on Defendant Johnston Coca-Cola Bottling Group, Inc.'s[1] ("Johnston") motion to dismiss for failure to state a claim, or in the alternative for summary judgment (Doc. No. 5). The issue presented is whether Plaintiff's employment discrimination claims against Johnston are barred by the doctrine of judicial estoppel, due to his failure to disclose these claims to the U. S. Bankruptcy Court, as required during his bankruptcy proceedings. For the reasons set forth below, Defendant's motion is well taken as to summary judgment and is **GRANTED**.

The background facts of this case are relatively simple. Plaintiff Anthony Wallace has been an employee of Johnston for several years, and has been involved in various administrative and legal proceedings against it. In October, 2001, he brought claims alleging racial discrimination, harassment, and breach of Ohio public policy jointly with several other employees. Parts of this action are still pending in the Ohio courts, and some have received class certification during certain periods of its procedural history. Plaintiff has been one of the class

---

[1] Defendant is here referenced as in the Complaint, but in its own briefs refers to itself as Coca-Cola Enterprises, Inc.

1

representatives. In May, 2003, Plaintiff filed administrative complaints with the Ohio Civil Right

Commission ("OCRC") and the National Labor Relations Board ("NLRB"), alleging retaliation

and harassment in relation to his participation in that lawsuit and to his filing of an internal

grievance against a supervisor.

In October, 2003, Plaintiff and his wife filed a voluntary petition for bankruptcy in the

U.S. Bankruptcy Court for the Southern District of Ohio pursuant to Chapter 7 of the Bankruptcy

Code. On his Schedule B list of personal property, Plaintiff declared that he had no contingent or

unliquidated claims. He also failed to list any claims on his "Statement of Financial Affairs."

Plaintiff was discharged from bankruptcy in March, 2004, without any distribution being made to

his creditors.

On November 22, 2006, Plaintiff filed the complaint in this case in the Court of Common

Pleas of Hamilton County, Ohio, alleging racial discrimination and retaliation against Johnston,

based on conduct which was, at least in substantial part, already the subject of administrative

proceedings that he had begun before the OCRC and the NLRB in May, 2003. Prior to bringing

the present claims, Plaintiff did not attempt to disclose their existence to the Bankruptcy Court in

any way.

Johnston removed the case to this Court, and now moves to dismiss for failure to state a

claim on which relief can be granted, or in the alternative for summary judgment, on the basis of

the doctrine of judicial estoppel. Johnston argues that the Court should not now permit Plaintiff

to take a position with respect to his legal claims inconsistent with that which he had previously

asserted before the Bankruptcy Court. This would occur if he were permitted to pursue these

claims now, after previously stating under oath that he had no such claims and after the

2

Bankruptcy Court had resolved his bankrupt estate on this basis.

Judicial estoppel may indeed be applied to preclude a plaintiff from litigating a claim he failed to disclose as an asset in a prior bankruptcy proceeding. *See, e.g., Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004). As the Court explained in *Eubanks*:

> The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition. Judicial estoppel is an equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment. Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.

*Id.* at 897 (internal citation and quotation marks omitted). In *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002), the Court noted that it had not decided whether bad faith or an attempt to mislead the court were prerequisites for the application of judicial estoppel, but did hold that it was inappropriate where the failure to disclose was due to mistake or inadvertence. *Id.* at 776. Such a failure may be deemed inadvertent where the debtor lacks knowledge of the factual basis of the undisclosed claim, or where the debtor has no motive for concealing the claim. *Id.*

The first ground for finding inadvertence is clearly inapplicable here, inasmuch as Plaintiff was aware of the factual basis for his claims before he ever filed his bankruptcy petition in October, 2003. Indeed, he had actually commenced proceedings against Johnston based on those same facts several months before, in May of that year.

In his affidavit (Doc. No. 11, Exhibit 1), Plaintiff avers that he did not act purposefully or in bad faith in failing to disclose the claims; he did so because he was confused by his status

3

as a class representative in the parallel state class action, believing that the claims belonged to the class as a whole and not to him individually. He further argues that the personal claim he is presently asserting is distinct from the claim in which he was acting as a class representative. Consequently, he submits, there is no actual inconsistency between his previous statement that he personally had no claim, and his present pursuit of these claims.

Plaintiff's protestations of good faith in his affidavit do not meet the *Browning* test for inadvertence, since they rely on legal, not factual, ignorance or mistake. *Browning*, 283 F.3d at 776. The Court notes in this connexion that Plaintiff was represented by counsel throughout the bankruptcy proceedings. This fact undercuts any possibility that Plaintiff's omission was due to lack of understanding of the bankruptcy process, at least to the extent that such ignorance might have been reasonable: any question that he had about the required disclosures could easily have been answered.

The second ground for finding inadvertence is also unavailable to Plaintiff in this case. He certainly did have a motive for concealing his claims from the Bankruptcy Court: if he had disclosed them, they would have become the property of his estate in bankruptcy, and any damages received would have been used to satisfy his debts. However, he did not make this possible source of funds available to the bankruptcy trustee to pursue, as he should have. If Plaintiff were to pursue these claims successfully before this Court now, any damages awarded would be unjustly received by him personally, rather than being applied to the satisfaction of his earlier debts.

The fact that Plaintiff did not offer to disclose his claims to the Bankruptcy Court until Johnston drew the matter to the attention of the Court of Common Pleas, and then of this Court,

4

also suggests that Plaintiff previously sought to conceal his claims. Since he did not voluntarily disclose them, but only offered to do so when circumstances compelled him, the record suggests a wilful failure to disclose rather than an inadvertent one. *See Burnes v Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)("The success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing Billups to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them").

Plaintiff in this case should be compared to the plaintiffs in *Eubanks*, where the Court found that the non-disclosure was genuinely inadvertent. In *Eubanks*, the Court noted that plaintiffs attempted to amend their bankruptcy schedules to disclose the defendant both as a creditor and as a potential asset, and put the court and the bankruptcy trustee on notice of the asset through correspondence, motions, and status conference requests. *Eubanks*, 385 F.3d at 898-99. In contrast, in this case, Plaintiff took no steps to disclose his claims to the bankruptcy court until circumstances forced him to do so, despite the continuing duty to update his schedules. Whereas in *Eubanks* the plaintiffs did everything they could to bring their claim to the bankruptcy court's attention, here, Plaintiff took no voluntary action to disclose his claims to the bankruptcy court. *Compare Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, 58 (S.D.N.Y. 1999)(applying judicial estoppel where debtor repeatedly failed to make adequate disclosure of claims).

Finally, the Court must consider Plaintiff's argument, advanced in his affidavit, that his present claims are distinct from the class claims he was pursuing during his bankruptcy, such

that his present pursuit of these claims is consistent with his prior denial that he had any claims. This argument fails, because these claims rest at least partly upon the same facts as those alleged in the class claims. More importantly, he denied in October, 2003, that he had *any* claims, while being aware that the factual basis of these claims had existed since at least the preceding May.

Plaintiff's alternative argument that his bankruptcy disclosures were actually accurate, because his claim did not exist until he had received a determination of his administrative charges, is equally unavailing. A claim accrues for these purposes at the time that the wrongful conduct giving rise to it is suffered, and not when administrative remedies have been exhausted. This is clear from many cases in which judicial estoppel has been applied in the context of a claim which was improperly omitted from previous bankruptcy filings. *See, e.g., Lewis v. Weyerhauser Co.*, 141 Fed. Appx. 420, 422 (6th Cir. 2005)(applying estoppel where plaintiff had filed an administrative complaint with the EEOC one month after her bankruptcy plan was confirmed, based on facts known prior to the bankruptcy), and *Randelson v. Kennametal, Inc.*, 2006 WL 3196457, at *2 (N.D. Ohio Nov. 2, 2006)(holding plaintiff's filing of an EEOC complaint to be evidence of her knowledge of the claim sufficient to show that its omission from bankruptcy filings a month later was not inadvertent).

It is for this reason that an omission from bankruptcy filings is found to be mistaken under *Browning* only if it results from ignorance of the factual basis on which the claim rests. *Browning*, 283 F.3d at 776. A moment's reflection on the purpose of the required disclosures should make this clear. The bankruptcy trustee did not need to know if he had the right to file suit on behalf of the bankrupt estate immediately upon receiving Plaintiff's Schedule B disclosures, but rather whether Plaintiff had any potential causes of action which might yield

6

damage awards in the forseeable future. If the Complaint in this case is well founded, Plaintiff had a claim by May, 2003, at the latest.

Therefore, the Court concludes that Plaintiff's non-disclosure of the existence of these claims to the U.S. Bankruptcy Court was not inadvertent, and is inconsistent with the pursuit of these claims before this Court. Consequently, the Court holds that judicial estoppel bars him from proceeding with this action against Johnston. On this basis, it is clear that Johnston is entitled to judgment as a matter of law. The Court does not reach the merits of Plaintiff's case.

On a motion to dismiss for failure to state a claim on which relief can be granted, where matters outside the pleadings are presented to and not excluded by the Court, the motion is to be treated as one for summary judgment. F.R.Civ.P. 12(b). In this case, the Court has considered affidavits outside the pleadings submitted by both parties concerning Plaintiff's bankruptcy and the reasons why he failed to disclose these claims at that time. The Court will therefore dispose of this motion as one for summary judgment in accordance with F.R.Civ.P. 56.

Accordingly, under Rule 56 (c), at least ten days must have elapsed between the serving of a motion for summary judgment in this case and the granting of judgment, during which the adverse party had the opportunity to serve affidavits opposing the motion. In fact, Johnston moved to dismiss or in the alternative for summary judgment, and so Plaintiff has been on notice that the Court might dispose of the motion in this way since he was served with a copy of it on December 28, 2006. Further, Plaintiff has actually availed himself of the opportunity to respond to the motion and to serve an opposing affidavit.[2]

---

[2]Plaintiff indicated in his Memorandum in Opposition to this motion (Doc. No. 11) on January 31, 2007, that he intended to serve another affidavit, in addition to the one submitted as Exhibit 1 to that Memorandum, that had been originally submitted to the Court of Common Pleas. He has not done so as of the date of this Order.

In such circumstances, the granting of summary judgment without further notice is proper. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)(holding that plaintiff had proper notice that court might treat motion as one for summary judgment, rather than as motion to dismiss, where defendant had actually filed such motion in the alternative, and where plaintiff had responded by submitting materials outside the pleadings, such as affidavits).

Therefore, for the reasons stated, Defendant's motion for summary judgment is well taken and is **GRANTED**. Plaintiffs' complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Date  3/23/07

Sandra S. Beckwith, Chief Judge
United States District Court

8